# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| TIMOTHY W. SHACKLEFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:15-CV-282-TLS |
| | ) | |
| D&W FINE PACK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Timothy W. Shackleford, has asserted two claims against his former employer, D&W Fine Pack, LLC. He alleges that the Defendant terminated his employment in retaliation for exercising his right to worker's compensation benefits after he sustained a work-related injury. He also claims that his termination was a violation of the Family Medical Leave Act (FMLA or the Act). The Plaintiff has moved for summary judgment on the FMLA claim [Pl.'s Mot. for Partial Summ. J., ECF No. 19], and the Defendant has moved for summary judgment on both claims [Def.'s Dispositive Mot. for Summ. J., ECF No. 22]. Also pending are the Defendant's Motion to Strike [ECF No. 27], and the Plaintiff's Motion for Leave to File Declaration of Dr. David Conner [ECF No. 33].

For the reasons stated in this Opinion, the Court finds that the Defendant is entitled to judgment as a matter of law on the FMLA claim. The Court will relinquish jurisdiction of the state law claim and remand the case to state court. It is not necessary to rule on the Motion to Strike or the Motion for Leave to File, as the evidence that is the subject of those requests is not material to the Court's decision.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)).

The material facts of this case—those that are outcome determinative under the applicable law, *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)—are not in dispute. Because the Court is only concerned with material facts, the Statement of Facts set forth below does not include all of the facts that were submitted by the Plaintiff in his Statement of Undisputed Material Facts. *See Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008) (noting that "[i]rrelevant or unnecessary facts do not deter summary judgment, even when in dispute"). Moreover, the Court only included those facts that were supported by the materials

in the record. *See* Fed. R. Civ. P. 56(c)(1). Any reasonable inferences accompanying those facts are discussed in the Analysis section of the Opinion.

**STATEMENT OF FACTS**

The Plaintiff began working for the Defendant on November 7, 2013, in the position known as an Extrusion Operator. On February 22, 2014, he injured his shoulder while performing his Extrusion Operator duties. The Plaintiff notified Sylvester Thomas, the Defendant's Human Resources Generalist. Thomas completed the necessary forms to be filed with the Indiana Worker's Compensation Board. A claims adjuster at Zurich North America, the Defendant's worker's compensation insurance company, was assigned to handle the Plaintiff's case.

The Plaintiff was referred to Dr. Greg Sassmannshausen at Fort Wayne Orthopedics for treatment. The Plaintiff began physical therapy three days a week, and was also placed on light duty work restrictions. The Defendant moved the Plaintiff to a position in a different area of the facility that would accommodate his restrictions.

On June 19, 2014, Dr. Sassmannshausen performed surgery on the Plaintiff's shoulder. Afterwards, the Plaintiff was returned to his light duty assignment. However, the Plaintiff subsequently re-injured his shoulder when he lifted some boxes that weighed more than his lifting restriction.

On September 4, 2014, the Plaintiff began taking part in the Defendant's new transitional return to work (RTW) program. Through the program, the Plaintiff was assigned work off-site

that he could perform within his restrictions.[1] The 90-day program was set to expire on December 4, 2014.

At the end of October, Dr. Sassmannshausen opined that the Plaintiff had reached maximum medical improvement (MMI). Thomas notified management, as well as Zurich, attempting to determine the next steps for the Plaintiff. On November 17, 2014, Thomas realized that the Plaintiff's RTW assignment would be ending soon, and asked Dr. Sassmannshausen to complete a questionnaire about the Plaintiff's return to work status. Dr. Sassmanshausen's opinion was that the Plaintiff had permanent restrictions that would not allow him to perform the duties of an Extrusion Operator.

The Plaintiff sought a second medical opinion because he was still having a lot of issues with his shoulder. On November 24, 2014, Dr. David Conner evaluated the Plaintiff and prepared a report. He noted that the Plaintiff's continuing pain and dysfunction in his shoulder was not improving. According to an MRI that Dr. Conner had ordered, the Plaintiff showed some residual rotator cuff tearing and some irritation of the biceps tendon. The Plaintiff desired to undergo surgical intervention, the goal of which was to address the biceps tendon pain and the rotator cuff tendon tearing, and to get the Plaintiff back to full regular duties. Meanwhile, the Plaintiff would stay on his permanent work restrictions. That same day, or shortly thereafter, the Plaintiff gave Dr. Conner's report to Thomas, and stated that he could get his restrictions lifted if he underwent the surgery recommended by Dr. Conner. Thomas advised the Plaintiff to follow up with Zurich about Dr. Conner's findings.

---

[1] The Plaintiff was not performing work for the benefit of the Defendant, but was still being paid by the Defendant.

On December 15, 2014, the Plaintiff met with Thomas. During the meeting, the Plaintiff inquired if the Defendant had decided whether to extend his transitional off-site work, whether the Defendant had made any decisions about Dr. Conner's recommended surgery, and also inquired if he could take FMLA leave. Thomas relayed that he had not heard from the Defendant about extending the RTW period or the surgery.[2] Thomas asked the Plaintiff if he had received a response from Zurich. After the meeting, Thomas followed-up with the Human Resources manager regarding the Plaintiff's inquires.

The next day, December 16, the Defendant notified the Plaintiff that his employment was being terminated because he was at MMI, the work program had expired, and the Defendant could not accommodate his permanent restrictions.

Eventually, the Plaintiff obtained the required approval from Zurich to seek treatment from a doctor located in Indianapolis. On February 11, 2015, the Plaintiff underwent a second surgery, performed by the Indianapolis doctor. Eleven weeks later, on April 30, 2015, the Plaintiff was released with no restrictions.

## ANALYSIS

**A.     FMLA Claim**

The central provision of the FMLA is that it guarantees to eligible employees 12 weeks of unpaid leave in a 1-year period following certain events, such as a serious health condition. 29 U.S.C. § 2612(a)(1). During these 12 weeks, the employer must maintain the employee's group

---

[2] Thomas disputes that the Plaintiff mentioned taking FMLA leave during this meeting. The Defendant's Employee Handbook provides that employees requesting FMLA leave provide the Human Resources manager with verbal or written notice of the need for the leave.

health coverage. *Id.* § 2614(c)(1). Leave must be granted when "medically necessary," on an intermittent or part-time basis. *Id.* § 2612(b)(1). When an employee makes a timely return to work, the employer must reinstate the employee to his or her former position or to an equivalent position. *Id.* § 2614(a)(1). To protect these rights, the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" the rights provided. *Id.* § 2615(a)(1). Employers who violate § 2615 are subject to consequential damages and appropriate equitable relief. *Id.* § 2617(a)(1).

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Thus, if a plaintiff suffered no harm from an FMLA violation, he is not entitled to any relief. *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) ("[S]ection 2617 provides no relief unless the plaintiff can prove that he was prejudiced by the violation.").

In *Franzen*, the employer had denied FMLA leave to the plaintiff and terminated his employment for unexcused absences. The district court conducted a jury trial on the sole question of whether the plaintiff had provided his employer with the medical documentation needed to obtain FMLA leave. 543 F.3d at 423. The jury concluded that he had provided the notice. *Id.* at 423–24. However, in a subsequent bench proceeding on damages, the district court found that the plaintiff had failed to show that he was able to return to work at the time an

6

FMLA leave would have ended, and had thus failed to prove damages. *Id.* at 424. As a result, the district court dismissed the case. *Id.* The Seventh Circuit affirmed, explaining that an employee does not have a "right to reinstatement—and, therefore, damages—if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job." *Id.* at 426. Rather, such an employee's employment could be lawfully terminated, and he is therefore not entitled to damages as a result of the termination. *Id.*

Here, the Plaintiff argues that a jury should decide whether he sustained any harm or damages from the Defendant's interference with his FMLA rights, which he has identified as the failure to grant him twelve weeks of leave to obtain the second surgery. He maintains that it is genuinely disputed whether he could have returned to work without restrictions within twelve weeks of taking leave. In consideration of this argument, the Court begins with the undisputed facts.

It is undisputed that in late October 2014, the Plaintiff's treating physician, Dr. Sassmannshausen, released the Plaintiff with permanent restrictions. On November 17, he reported that the Plaintiff was at MMI and would not be able to perform the duties of his position due to his permanent restrictions. In late November 2014, the Plaintiff received a second opinion from Dr. Conner, who believed that the Plaintiff could fully recover if he underwent a second surgery. Dr. Conner also opined that the Plaintiff's medical issue was related to his original injury and, therefore, it was covered by worker's compensation. The Plaintiff did, in fact, undergo a second surgery, which was performed by a Zurich-approved doctor, and was released without restrictions eleven weeks after the surgery.

Based on this successful eleven-week recovery, the Plaintiff asserts that he would have

7

returned to work without restrictions within twelve weeks if the Defendant had simply granted him the FMLA leave that he asked for. However, the Plaintiff's argument ignores certain other facts, which are also undisputed. The Plaintiff's treatment had to be approved by Zurich, who advised the Plaintiff that it wanted the Indianapolis doctor to perform the surgery. This surgery did not take place until February 11, 2015. The Plaintiff was not released to regular work until April 30, 2015. This release date is more than twelve weeks after the date the Plaintiff requested FMLA leave.

To address this problem with his FMLA claim, the Plaintiff argues that "[h]ad he been given 12 weeks of FMLA leave he would not have lost his job because the notice of FMLA leave would have established the time frame in which the surgery needed to be scheduled and completed." (Pl.'s Br. 14, ECF No. 29.) For example, if the Plaintiff "got the sense" that Zurich or the Defendant were "stalling his medical treatment, he arguably could have just undergone the surgery with Dr. Conner by submitting the cost through his health insurance, albeit running the risk of being penalized through the worker's compensation process as engaging in unauthorized medical treatment." (*Id.* 14 n.3.)

The Plaintiff's theory of harm is not convincing because there is no evidence linking the scheduling of the second surgery to the denial of FMLA leave. As far as the Court can tell, the two issues are entirely unrelated, with the Plaintiff having to pursue matters through Zurich regardless of his leave status, or his employment status, with the Defendant. The Court acknowledges that it is reasonable to assume that the Plaintiff might have been able to obtain the surgery earlier than February 11 had he known he only had twelve weeks before he would have to return to his full duties. That said, there is no evidence in the record to suggest that it could

8

have been so expedited as to meet a twelve-week deadline considering that the recovery period alone was eleven weeks. *See Parker v. Fed. Nat'l Mortg. Ass'n*, 741 F.2d 975, 980 (7th Cir. 1984) ("The district court is not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones."). The Plaintiff himself testified that he did not think the surgery could have been scheduled any earlier than February 11, 2015 (Pl.'s Dep. 122 (describing the process with Zurich and the doctor in Indianapolis).) There is no documentation in the record regarding Zurich's approval procedures or anything else that would shed light on whether it would have been possible for the surgery to be moved up nearly eight weeks to accommodate the Plaintiff's attempts to make a timely return to work. Neither does the Court have any information regarding whether the Indianapolis doctor's winter 2014–2015 schedule would have permitted an earlier surgery date. The Plaintiff's conjecture on what could have happened with his surgery date if he had been granted leave is not supported by any evidence upon which a finder of fact could rely.

Even if the Plaintiff had maintained his employment, and thus his insurance benefits, for twelve weeks, nothing in the record suggests that this would have made a difference to the timing of his surgery, or that he otherwise incurred damages by not being under the Defendant's private health insurance coverage during that time. The private health insurance coverage the Defendant provided to the Plaintiff when he was employed excluded coverage for services arising out of or in the course of employment for which Indiana's workers' compensation law provided benefits. Thus, even if the Plaintiff developed a "sense" that he would not be able to obtain the surgery and fully recover within the allotted twelve weeks, and did so with sufficient time remaining to pursue alternatives that would allow him to return within twelve weeks, he

could not have simply turned to his private health insurance for coverage, as his lawyer suggests. Both Dr. Sassmannshausen and Dr. Conner had concluded that the Plaintiff's injury was the result of a workplace injury. Neither has the Plaintiff submitted any evidentiary proof that, had he been granted FMLA leave, he would have immediately scheduled the surgery with Dr. Conner and paid for it out of his own pocket. The Plaintiff has not designated any evidence that a reasonable jury could depend upon to infer that he would have pursued his surgery differently—and been successful in that pursuit—had he been granted FMLA leave.

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Plaintiff has not pointed to any compensation or benefits he lost by reason of the Defendant's failure to grant him twelve weeks of unpaid leave beginning in November or December 2014. Only a timely-returning employee is entitled to reinstatement to his previous position. Because the Plaintiff has not come forward with evidence that would allow a jury to find that he suffered damages as a result of the Defendant's failure to grant him twelve weeks of unpaid FMLA leave, the Court must enter summary judgment for the Defendant.

**B.**     ***Frampton* Retaliation Claim**

The Court's jurisdiction over the state-law retaliation claim is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367, which extends the jurisdiction of federal district courts to all claims that are sufficiently related to the claim or claims on which their original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution. The federal statute that allows supplemental jurisdiction of state law claims also

provides that the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that established law of this circuit is that the "usual practice" is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial).

Upon consideration of judicial economy, convenience, fairness, and comity, *see Wright*, 29 F.3d at 1251, this Court does not find a basis to retain jurisdiction of the case, *see Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (identifying three situations in which jurisdiction over supplemental state claims should be retained even though the federal claims have dropped out). The Court, in deciding the FMLA claim, has not decided an issue dispositive of the state law claim, or otherwise committed substantial resources to the claim. *See RWJ v. Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (stating that "[i]n certain limited circumstances, a substantial investment of the federal court's time may overcome the presumption" of relinquishing supplemental jurisdiction). Because this case was originally filed in state court, it can be remanded there with no prejudice to the Plaintiff.

C.  **Miscellaneous Motions**

Both the Defendant's Motion to Strike and the Plaintiff's Motion for Leave to File Declaration concern opinions that Dr. Conner rendered about the Plaintiff's recovery time in a

11

letter dated October 28, 2016. Dr. Conner's letter responds to questions that were posed by the Plaintiff's counsel. The Defendant complains that Dr. Conner was not designated as an expert, that the letter is not a sworn statement, and that the statements are inadmissible speculation. The Plaintiff believes that Dr. Conner's letter falls within a hearsay exception because it is the medical opinion of a treating doctor, and that the Plaintiff was not required to designate Dr. Conner as an expert because he was a treating physician. The Plaintiff also contends that the evidence does not prejudice the Defendant, as the Plaintiff had already told the Defendant that the second surgery recommended by Dr. Conner would allow him to return to work within twelve weeks. Additionally, the Plaintiff has requested that he now be allowed to file the declaration of Dr. Conner, which contains almost verbatim the statements contained in Dr. Conner's letter.

For the reasons set forth above, Dr. Conner's opinion that the Plaintiff would have likely returned to regular work without restriction about twelve weeks after undergoing surgery does not change the outcome of this case. In fact, as recognized above, the Plaintiff recovered from his surgery within that time frame. That fact, however, does not establish that the Plaintiff, if FMLA leave had been granted, would have immediately undergone the second surgery and returned to work within twelve weeks of taking leave. Accordingly, the evidence is irrelevant, and there is no reason to rule on whether it should be stricken, or whether to permit its submission in a different form.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's Motion for Partial

Summary Judgment [ECF No. 19], GRANTS IN PART the Defendant's Dispositive Motion for Summary Judgment [ECF No. 22], and DENIES AS MOOT the Defendant's Motion to Strike [ECF No. 27] and the Plaintiff's Motion for Leave to File [ECF No. 33]. The Clerk is directed to REMAND this case, with the remaining state law claim still pending, to the Allen Superior Court.

SO ORDERED on January 25, 2017.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT